UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MANOUCHEHR GOUDARZI et al., <br><br> Plaintiff(s), <br><br> v. <br><br> J.P. MORGAN CHASE BANK N.A., <br><br> Defendant(s). | CASE NO. C24-1882-KKE <br><br> ORDER ON MOTION TO COMPEL ARBITRATION |

Plaintiffs Manouchehr Goudarzi, Valerie Goudarzi, and Maryam Goudarzi[1] (collectively, "Plaintiffs") sue Defendant J.P. Morgan Chase Bank, N.A. ("JPMC"), alleging racial discrimination and violation of the Equal Credit Opportunities Act and Washington Consumer Protection Act. Dkt. No. 1 at 7.

Defendant now moves the Court to compel Plaintiffs to arbitrate their claims. Dkt. No. 16. The burden is on Defendant to demonstrate that Plaintiffs had reasonable notice of the arbitration clause and assented to its terms. As detailed below, the record proffered by Defendant does not carry this burden. To the contrary, the incomplete and contradictory evidence presented in support of Defendant's motion raises numerous factual issues regarding whether Plaintiffs demonstrated mutual assent to the arbitration clause. More importantly, the record shows that even if an

---

[1] For clarity, this order identifies Plaintiffs individually as "Mr. Goudarzi," "Mrs. Goudarzi," and "Ms. Goudarzi," respectively.

ORDER ON MOTION TO COMPEL ARBITRATION - 1

agreement to arbitrate was formed, the arbitration clause is procedurally unconscionable and thus unenforceable.  For this reason, the Court denies Defendant's motion to compel.  Further, because the Court determines arbitrability in this case, Defendant's request that any discovery on these issues should take place in arbitration is also denied as moot.[2]

## I.    BACKGROUND

This is a civil rights case, involving allegations of racial discrimination connected with the closing of Plaintiffs' bank accounts at JPMC.  The Court sets forth the relevant facts below, most of which derive from the complaint.

**A.    The December 2021 Incident and the Closing of Plaintiffs' Accounts**

On December 17, 2021, Mr. Goudarzi, who is Middle Eastern, visited a JPMC branch in Seattle and requested a cashier's check from his account.  Dkt. No. 1 at 1–2, 3.  After he presented three forms of identification, the teller refused to issue him the cashier's check without explaining why.  *Id.* at 2, 4.  She photocopied his IDs without his consent.  *Id.*  Mr. Goudarzi complained, and asked the other bank tellers for help, but they refused to assist him.  *Id.*  He left the branch location, after which the teller reported him to the police.  *Id.* at 5.

The next day, Mr. Goudarzi made a formal complaint via Defendant's telephone hotline and described the treatment he received.  Dkt. No. 1 at 5.  He also contacted his personal banker at JPMC and told her that he felt that the teller had discriminated against him.  *Id.*  His personal banker notified Mr. Goudarzi that the manager at that branch was out of town, but that she would leave the manager a message.  *Id.*  On January 28, 2022, Defendant closed Mr. Goudarzi's account without notice.  *Id.*

---

[2] In opposition to Defendant's motion to compel, Plaintiffs sought discovery relating to the arbitration clause.  Dkt. No. 24.  Defendant maintained that no discovery was needed for resolving this motion and filed a motion to stay discovery.  Dkt. No. 27 at 11, Dkt. No. 29 at 5.  Given the Court's disposition of the motion to compel, Defendant's motion to stay is moot.

ORDER ON MOTION TO COMPEL ARBITRATION - 2

On February 1, 2022, Plaintiffs received a letter dated January 14, 2022, stating that Defendant had closed Mrs. Goudarzi's account as well. *Id.* at 6. Mr. Goudarzi then discovered that Defendant had closed all three Plaintiffs' accounts. *Id.* Over a month passed before Chase provided Plaintiffs access to their funds by sending Plaintiffs a check via mail. *Id.* at 2. In a letter dated May 11, 2022, Defendant notified Plaintiffs that it closed their accounts due to the December 17, 2021 incident. *Id.* at 6.

**B.     The Arbitration Clause**

Plaintiffs had been longtime account holders with Defendant. Dkt. No. 1 at 3, 5–6. Mr. and Mrs. Goudarzi were joint account holders on at least one JPMC account. Dkt. No. 18 at 25. Ms. Goudarzi was also a joint account holder with Mr. Goudarzi. *Id.* at 9.

When customers open an account with JPMC, they are required to electronically "sign" a Personal Electronic Signature Card ("signature card"). *See id.* at 5. There is no evidence in the record explaining the process by which customers affix their electronic signature, or the mechanism by which a customer would view the information contained on the card. The signature card includes the following acknowledgment:

> I acknowledge receipt of the Bank's Deposit Account Agreement or other applicable account agreement or the Chase Liquid Agreement, which includes all provisions that apply to this deposit account and/or Chase Liquid Card and the Bank Privacy Policy, and agree to be bound by the terms and conditions therein as amended from time to time.

Dkt. No. 18 at 5. The signature card and the acknowledgment do not include a hyperlink or web address and do not indicate that any agreement referenced therein contains an arbitration clause. *Id.* Rather, in the version of the signature cards attached to Defendant's motion, the first page is an otherwise blank page that contains the statement: "A version of the agreements and disclosures that you can print and keep is available at Chase.com/Disclosures[.]" *Id.* at 4. Defendant does not

explain where a customer would have seen this statement, or how it is connected to the signing of the signature card itself. *See id.* at 1–2.

In their brief, Plaintiffs contend that visiting Chase.com/Disclosures[3] reveals three different hyperlinks, labeled: Deposit Account Agreement ("DAA"), Additional Banking Services and Fees for Personal Accounts, and Rate Sheet. Dkt. No. 24 at 6. To access the DAA, after clicking on the correct hyperlink, Plaintiffs claim that customers must type in the ZIP code associated with their bank account. *Id.* at 7. The website then navigates to another page with links to both current and past-effective-date documents, including multiple versions of the DAA. *Id.* After choosing the currently effective DAA from among other outdated versions, the customer must scroll to page 14, where the arbitration clause is located. Dkt. No. 19 at 17.

The arbitration clause is not identified in the table of contents for the March 17, 2019 DAA, which was the version in effect when Plaintiffs opened some of the subject accounts. *Id.* at 5; Dkt. No. 18 (signature cards for accounts opened in 2019). For the DAA in effect from November 14, 2021 to June 11, 2022, the arbitration clause is listed in the last section of the table of contents. Dkt. No. 19 at 31. This version of the DAA was in effect during the allegedly discriminatory incident in December 2021, and when Defendant unilaterally closed Plaintiffs' accounts in January 2022. *See* Dkt. No. 1 at 3–6.

The arbitration clause in the DAA states:

> You and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small

---

[3] Plaintiffs argue in their brief that accessing the DAA and arbitration clause online requires 10 discrete steps. Dkt. No. 24 at 7. Defendant generally disputes this characterization but does not explain how or why Plaintiffs' recitation is inaccurate. Dkt. No. 27 at 8 n.4. Neither party provides evidence in the form of screenshots or declarations describing the process of accessing the correct DAA on the Chase.com/disclosures website, which is the standard and best practice. *See Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1192 (W.D. Wash. 2024) (declarations or screenshots typically submitted by defendant to aid the Court's inquiry regarding the sufficiency of the notice of terms). Thus, while the Court provides this information for context, and because Defendant does not meaningfully dispute it, the Court's decision does not turn on the multi-step process argued by the Plaintiffs.

ORDER ON MOTION TO COMPEL ARBITRATION - 4

claims court). This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW. UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL. YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE IN A CLASS OR REPRESENTATIVE BASIS IN COURT OR IN ARBITRATION. ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

Dkt. No. 19 at 17, 51.

In support of its motion, Defendant attached signature cards for Plaintiffs' accounts opened in 2019, and relied exclusively upon the acknowledgment on these cards as evidence of Plaintiffs' assent to the arbitration clause in the DAA. *See* Dkt. No. 18. In response, Plaintiffs provided a declaration stating that they had not seen these signature cards, were never shown the acknowledgment section at account opening, and were not otherwise informed about an arbitration clause or documents that contained an arbitration clause. Dkt. No. 25 at 1–2. Mr. Goudarzi explained that when they opened these accounts in 2019, they were merely asked to enter their password on the teller's computer, and the teller completed the rest of the account opening process. *Id.* Mr. Goudarzi further attested that "at any time banking with Chase" he does not recall ever seeing the acknowledgment section as reflected in the signature cards at Docket Number 18. *Id.* at 2. Finally, Mr. Goudarzi attested that he had received account closure letters for only some of his JPMC accounts, and that those letters did not match the accounts identified by Defendant on the signature cards submitted in Docket Number 18. In reply, Defendant submitted additional signature cards, for accounts opened in January 2022, just before all of Plaintiffs' accounts were closed. Dkt. No. 28. Defendant did not provide any explanation of the account opening process in conjunction with these additional signature cards or otherwise provide any evidence refuting Plaintiffs' declaration.

ORDER ON MOTION TO COMPEL ARBITRATION - 5

### C. Plaintiffs Sue and Defendant Moves to Arbitrate.

On November 14, 2024, Plaintiffs sued Defendant, alleging racial discrimination in violation of federal and Washington state law. Dkt. No. 1 at 7 (citing 42 U.S.C. § 1981, 12 C.F.R. § 1002.2(e), WASH. REV. CODE § 49.60.030, *et seq.*, WASH. REV. CODE § 19.86). Defendant responded to the complaint on January 13, 2025, and then moved to compel arbitration on March 6, 2025. Dkt. Nos. 10, 16. The parties fully briefed the motion. Dkt. Nos. 16, 24, 27. Defendant then moved for a protective order to stay discovery pending the disposition of the motion to compel arbitration. Dkt. No. 29. The parties also fully briefed that motion. Dkt. Nos. 31–33. This matter is now ripe for the Court's consideration.

## II.    LEGAL STANDARDS

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. Accordingly, courts place arbitration agreements on "equal footing with other contracts," and recognize "a federal policy in favor of arbitration[.]" *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). "This burden is substantial and the Court must give the party denying the existence of an agreement 'the benefit of all reasonable doubts and inferences that may arise.'" *Saeedy*, 757 F. Supp. 3d at 1188 (quoting *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoted source omitted)); *see also Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (a "presumption in favor of arbitrability" applies only where the *scope* of

an agreement to arbitrate is ambiguous: "If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply.").

"Where there is no conflict between the FAA and the substantive statutory provision, 'the FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Munro v. Univ. of S. California*, 896 F.3d 1088, 1091 (9th Cir. 2018) (quoting *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)) (cleaned up). "'If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms.'" *Id.* (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

**B.    Assessing Validity of Arbitration Clauses**

Plaintiffs do not challenge the scope of the arbitration clause; they argue that the arbitration agreement is invalid. Dkt. No. 24 at 3 n.1. To decide the validity of an arbitration clause, federal courts "apply ordinary state-law principles that govern the formation of contracts." *Cir. City Stores*, 279 F.3d at 892. "[A]lthough courts may not invalidate arbitration agreements under state laws applicable *only* to arbitration provisions, general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Id.* (cleaned up).

The parties agree Washington law applies. The Court thus applies Washington contract law in determining whether arbitrability is determined by the Court and whether the arbitration agreement is valid and enforceable. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Washington law, to assess an agreement's validity, the court must "determine the mutual intentions of the contracting parties according to the reasonable meaning of their words and acts." *Hoober v. Movement Mortg., LLC*, 382 F. Supp. 3d 1148, 1154 (W.D. Wash. 2019) (quoting *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 726 P.2d 8, 15 (Wash. 1986) (en banc)); *see*

ORDER ON MOTION TO COMPEL ARBITRATION - 7

*Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 492 (Wash. 2020) (en banc). Valid contract formation also requires consideration. *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004) (en banc). "Mutual assent is gleaned from the outward manifestations and circumstances surrounding the transaction." *Burnett*, 470 P.3d at 492. That said, "[i]n certain situations, an objective manifestation of assent will not form a contract." *Reed v. Sci. Games Corp.*, No. C18-0565RSL, 2021 WL 2473930, at *3 (W.D. Wash. June 17, 2021). Even "despite apparent indications of assent, an offeree 'is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature was not obvious.'" *Id.* (quoting *Knutson*, 771 F.3d at 566).

### III.  ANALYSIS

**A.  The Court Has Subject Matter Jurisdiction.**

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because Plaintiffs assert claims arising under 42 U.S.C. § 1981 and 12 C.F.R. § 1002.2(e), and Plaintiffs' state-law claims form part of the same controversy as the federal causes of action. Dkt. No. 1 at 7.

**B.  The Court Determines Arbitrability Here.**

While recognizing the factual disputes raised by Plaintiffs' declaration and conceding that discovery may be warranted, Defendant nonetheless argues that such contested issues must be resolved in the arbitral forum. Dkt. No. 27 at 7. Specifically, Defendant argues that an arbitrator should decide whether a valid agreement to arbitrate exists because the DAA incorporates by reference the rules of the American Arbitration Association ("AAA"). Dkt. No. 27 at 6–7. Generally, the court decides the "gateway" questions of arbitrability: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "[T]hese gateway issues can be

expressly delegated to the arbitrator where the parties *clearly and unmistakably* provide otherwise." *Id.* (emphasis in original) (cleaned up). "Under the FAA, 'the usual presumption that exists in favor of the arbitrability of merits-based disputes is replaced by a presumption *against* the arbitrability of arbitrability.'" *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1061 (9th Cir. 2018) (quoting *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 920 (9th Cir. 2011)) (emphasis in the original).

The Court acknowledges that in *Brennan*, the Ninth Circuit held that parties may clearly and unmistakably delegate arbitrability to the arbitrator by incorporating the AAA rules. *Brennan*, 796 F.3d at 1130. At the same time, the Ninth Circuit also limited *Brennan's* holding to the facts of that case, which involved an arbitration agreement "between sophisticated parties" and declined to express a view on the application of incorporating arbitration rules into consumer contracts. *Id.* (*quoting Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075 n.2 (9th Cir. 2013). Moreover, citing to *Brennan*, courts in this district and elsewhere have routinely found that where one party is unsophisticated, the incorporation of the AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability. *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1031 (N.D. Cal. 2022) (collecting cases); *Money Mailer, LLC v. Brewer*, No. 15-cv-1215, 2016 WL 1393492, at *2 (W.D. Wash. Apr. 8, 2016).

The Court finds that the parties have not "clearly and unmistakably" delegated the "gateway issues" of arbitrability to the arbitrator. As noted above, the Court applies Washington state law in determining who will decide arbitrability. The Washington Supreme Court clarified "that incorporation by reference does not, in itself, establish mutual assent to the terms being incorporated" in the absence of evidence in the record that the parties to the agreement "had knowledge of and assented to the incorporated terms." *Burnett*, 470 P.3d at 492. And as explained further below, at the very least, there is a factual dispute regarding mutual assent because the DAA,

ORDER ON MOTION TO COMPEL ARBITRATION - 9

the arbitration clause, and the incorporation of the AAA rules appear to be "inconspicuous contractual provisions of which [Plaintiffs were] unaware[.]" *Knutson*, 771 F.3d at 566; *see, e.g., Cooper v. Agrify Corp.*, No. C21-0061RSL-JRC, 2022 WL 2374587, at *3 (W.D. Wash. June 2, 2022) ("[T]here is no reason to assume (and certainly no clear and unmistakable evidence) that Weinstein understood that the reference to the AAA rules did anything more than identify the procedures that would apply once arbitration was initiated."). On this record, Defendant has not shown that the parties "clearly and unmistakably" delegated arbitrability to an arbitrator.

Accordingly, whether the parties agreed to arbitrate is an issue for the Court.

**C.    The Arbitration Clause is Unenforceable.**

Plaintiffs argue that the arbitration clause included in the DAA is unenforceable because Plaintiffs lacked adequate notice of the terms, or the arbitration clause is procedurally unconscionable. Dkt. No. 24 at 5. Defendant contends that the arbitration clause should be enforced because Plaintiffs received and electronically signed each signature card, which reflects that they acknowledged receipt of the DAA and agreed "to be bound by the terms and conditions contained therein as amended from time to time." Dkt. No. 27 at 3, Dkt. No. 16 at 8. Defendant also asserts that Plaintiffs had notice because "[m]onthly account statements sent to Plaintiffs contained language expressly stating Plaintiffs' accounts are governed by the currently effective DAA." Dkt. No. 16 at 2. According to Defendant, the subsequent updates to the DAA were "made available" after they opened their accounts and were accepted by Plaintiffs via their continued use of the accounts. *Id.* As detailed below, there are factual disputes in the record as to mutual assent which preclude granting the motion to compel. Moreover, the Court concludes the arbitration agreement is unconscionable as a matter of law.

ORDER ON MOTION TO COMPEL ARBITRATION - 10

1. <u>The record contains factual disputes over whether Plaintiffs assented to the arbitration clause.</u>

Washington law requires mutual assent for the formation of a valid contract. *Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 255 (Wash. 1993). The Court looks to the parties' "outward manifestations and circumstances surrounding the transaction" to determine mutual assent. *Burnett*, 470 P.3d at 492. That said, even if an offeree shows objective manifestations of assent, they are not bound by "inconspicuous" and non-obvious contractual provisions of which they were unaware. *Knutson*, 771 F.3d at 566.

Mr. Goudarzi attests that when he opened his 2019 accounts in person, he "was not presented with the 'acknowledgement' section reflected on the 'Electronic Signature Card'" nor otherwise informed about the DAA or its arbitration clause. Dkt. No. 25 at 1–2. Mr. Goudarzi explains that when he opened his accounts, he only entered his password; the banker "completed the rest of the account opening." Dkt. No. 25 at 2. While Defendant insists that Mr. Goudarzi agreed he signed the acknowledgment, the cited statement in his declaration is not so clear. Rather, he attests that "at any time banking with Chase, I do not recall ever seeing an 'I accept' box to click on before affixing my electronic signature to a Chase Bank Agreement." *Id.* This general statement, when considered with the rest of his declaration, does not evidence mutual assent to the arbitration agreement. Though on reply, Defendant submitted additional signature cards for accounts opened in January 2022, it did not provide any evidence contesting Mr. Goudarzi's declaration regarding the process of opening his 2019 accounts, nor provide any other information beyond the signature cards themselves.

Even assuming Mr. Goudarzi saw the acknowledgment for some of his later-opened accounts, the acknowledgment, on its face, does not indicate that the DAA includes an agreement to arbitrate. The acknowledgment does not provide a hyperlink to the applicable DAA, or other

ORDER ON MOTION TO COMPEL ARBITRATION - 11

means for Plaintiffs to access the DAA at the time of the transaction. It is undisputed that Plaintiffs opened their accounts in person and Defendant fails to explain either the process for signing the signature cards or how Plaintiffs would have received the DAA in a bank branch. To the extent Plaintiffs were required to access the DAA online, Plaintiffs argue (and Defendant does not meaningfully dispute) that locating the DAA requires Plaintiffs to visit their website, navigate through several webpages, enter the accurate ZIP code, select the appropriate link from many to locate the applicable DAA, and then scroll to the correct page of the DAA to find the arbitration clause. Dkt. No. 24 at 6–7; *see also* Dkt. No. 27 at 8 n.4. According to Plaintiffs, none of these webpages indicate that the DAA includes an arbitration clause. Dkt. No. 24 at 6–7. Further, it is undisputed that even if Mr. Goudarzi had located the DAA at account opening, the arbitration clause was not listed in the table of contents for the 2019 DAA, and is buried halfway through a 23-page agreement in fine print. Dkt. No. 19. at 5, 17.

Defendant claims generally that Plaintiffs' characterization of finding the DAA online is inaccurate, and in any event, asserts that Plaintiffs "provide no evidence that the Goudarzis had to access the DAA online when they assented that they received a copy." Dkt. No. 27 at 8 n.4. Defendant claims that "the DAA provided at account opening" (*id.* at 9) and updates to the DAA were "made available to Plaintiffs" (Dkt. No. 16 at 2). But Defendant's only evidence that Plaintiffs received the DAA is the acknowledgment on the signature card, which Plaintiffs dispute ever seeing, and which does not reference the arbitration clause. Dkt. No. 27 at 9 (citing Dkt. Nos. 18, 28), Dkt. No. 16 at 2 (citing the DAA itself). There is no other evidence in the record showing

that Plaintiffs received or had access to a digital or physical copy of the DAA, and it is unclear in what format Defendant contends the DAA was "provided."[4]

Finally, Defendant's claim that the DAA was referenced in "monthly account statements" such that Plaintiffs should have had constructive notice of its terms is also not supported by evidence in the record. Dkt. No. 16 at 2. Rather, the citation for this claim is merely to declarations explaining the opt-out provision (Dkt. No. 19) and attaching copies of the DAA itself (Dkt. No. 17). Without the monthly account statements in the record, the Court cannot evaluate the extent to which any alleged language contained within them could have provided reasonable notice of the DAA and its arbitration clause.

To be clear, parties have an obligation to read the contracts they sign, *Yakima*, 858 P.2d at 255, and incorporation by reference does not automatically doom a contract. *W. Washington Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 7 P.3d 861, 865 (Wash. 2000). "But incorporation by reference is ineffective to accomplish its intended purpose where the provisions to which reference is made do not have a reasonably clear and ascertainable meaning." *Id.* Additionally, "courts will not enforce agreements where the terms are 'buried at the bottom of the page or tucked away in obscure corners of [a] website[.]'" *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220–21 (9th Cir. 2019). Plaintiffs' case is not a situation where the arbitration clause was "plain and unambiguous." *Yakima*, 858 P.2d at 255. The circumstances do not indicate that Plaintiffs "simply chose not to read whatever it was [they were] accepting[.]" *Reed*, 2021 WL 2473930, at *3

---

[4] Defendant variously refers to the DAA as an "online agreement" and cites authority relating to "browse wrap" and "clickwrap" agreements. Dkt. No. 27 at 8–9. But Defendant also appears to suggest that Plaintiffs received a physical copy of the DAA at account opening, such that the Court should disregard the difficulty in locating the DAA online. *Id.* at 8 n.4. Again, the record is unclear. The declarations cited for this proposition only provide copies of the signature cards, they do not state that a physical copy of the DAA was ever provided, or that it is Defendant's practice to provide physical copies when accounts are opened in person. Nor does Defendant provide any information about the process by which a customer opens an account and signs the signature cards. Again, it is Defendant's burden to show an agreement to arbitrate exists, and the Court must give Plaintiffs the benefit of all reasonable doubts and inferences that may arise. *Three Valleys Mun. Water Dist.*, 925 F.2d at 1141.

ORDER ON MOTION TO COMPEL ARBITRATION - 13

(finding mutual assent where the terms of service were accessible through a hyperlink next to the button to accept the contract).

"Under Washington law, 'the existence of mutual assent or a meeting of the minds is a question of fact[,]' which can be resolved by the court only where the evidence permits only one reasonable conclusion." *Cooper*, 2022 WL 2374587, at *2 (internal citations omitted). The burden rests with Defendant to show that Plaintiffs had reasonable notice, whether actual or constructive. *Wilson*, 944 F.3d at 1220. Defendant improperly attempts to shift this burden to Plaintiffs, and argues that "[t]here is no basis for a favorable factual inference to Plaintiffs here, in absence of any proof" despite Ninth Circuit authority holding the opposite. Dkt. No. 27 at 9 n.6; *Three Valleys Mun. Water Dist.*, 925 F.2d at 1141. Moreover, to the extent Defendant now claims these issues require discovery, the Court observes that Defendant resisted Plaintiffs' efforts to seek discovery, and moved to stay discovery pending its motion to compel arbitration. Dkt. No. 29. The Ninth Circuit has affirmed denials of motions to compel arbitration in similar circumstances. *See Huuuge, Inc.*, 944 F.3d at 1220.[5]

Defendant offers authority wherein other district courts have granted motions to compel based on the same arbitration clause. In nearly all these cases, however, the validity of the DAA and arbitration clause was conceded by the offerees. *See, e.g.*, *Sunmonu v. Chase Bank, N.A.*, No. GLR-18-1695, 2019 WL 1258788, at *2 (D. Md. Mar. 19, 2019); *Sanchez v. J.P. Morgan Chase*

---

[5] In *Huuuge*, the district court denied a motion to compel arbitration where Defendant had failed to provide evidence of Plaintiff's actual notice of the terms of the arbitration agreement, and "implicitly" rejected Defendant's belated request for discovery on the notice issue. Affirming the district court, the Ninth Circuit observed:

> Huuuge wanted it both ways—if it won the motion to compel, great; if it didn't win, only then did it want discovery. Although Huuuge had the burden to present evidence of actual notice, it rolled the dice and chose not to pursue additional discovery at the outset, instead moving to stay discovery pending the motion to compel arbitration. Huuuge, as operator of the app, undoubtedly had at least some information probative of actual notice in its control, but it offered nothing on the actual notice issue.

*Huuuge*, 944 F.3d at 1120.

ORDER ON MOTION TO COMPEL ARBITRATION - 14

*Bank, N.A.*, No. 14-20468-CIV, 2014 WL 4063046, at *1 (S.D. Fla. Aug. 15, 2014); *KPA Promotion & Awards, Inc. v. JPMorgan Chase & Co.*, No. 20 CIV. 3910 (NRB), 2021 WL 1317163, at *4 (S.D.N.Y. Apr. 8, 2021).  In the singular case cited where the court analyzed the DAA's validity, the Court applied California law, and the Plaintiffs' knowledge of the arbitration clause was not at issue. *Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV 17-2477 JGB (SPx), 2018 WL 4726042, at *6 (C.D. Cal. Sept. 18, 2018).  Moreover, the question of mutual assent is fact dependent.  Defendant does not argue that these cases offer similar facts to Plaintiffs' circumstances aside from the DAA itself.

At the very least, there is a factual dispute over whether Plaintiffs received the DAA and had notice of the arbitration clause such that they assented to its terms.  The parties do not address how factual disputes over the formation of the contract should be adjudicated.  Defendant insists that factual disputes regarding arbitrability should go before the arbitrator.  Dkt. No. 27 at 4.  Plaintiffs argue that factual disputes indicate that further discovery is required, but do not explicitly request a trial on this issue.  Dkt. No. 24 at 9.

Under the FAA's procedural framework, if genuine factual disputes regarding contract formation exist, the Court should proceed to trial on arbitrability.  9 U.S.C. § 4; *Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 831 (9th Cir. 2022); *see, e.g.*, *Gonzalez v. Food Mgmt. Partners, Inc.*, No. 19-CV-08496-ODW (ASx), 2020 WL 4437267, at *3 (C.D. Cal. Aug. 3, 2020).  Courts have interpreted *Knapke* as allowing the parties to engage in limited discovery before the movant renews the motion to compel arbitration.  *See, e.g.*, *Tu v. Experian Info. Sols., Inc.*, No. 24-cv-1221-WQH-MSB, 2025 WL 1134612, at *9 (S.D. Cal. Apr. 16, 2025) (collecting cases).

At any rate, here, the Court need not resolve the factual issue of mutual assent to decide the motion to compel because as a matter of law, the arbitration clause is unconscionable and invalid.

ORDER ON MOTION TO COMPEL ARBITRATION - 15

### 2. The arbitration clause is procedurally unconscionable.

Even if Defendant met its burden to show an agreement to arbitrate had been formed on this record or at trial, the arbitration clause would still fail because it is procedurally unconscionable. *Burnett*, 470 P.3d at 496 (noting that a plaintiff's lack of knowledge about an arbitration clause speaks primarily to contract formation rather than unconscionability of an existing contract). Unconscionability as a contract defense can invalidate arbitration agreements. *Cir. City*, 279 F.3d at 892. Under Washington law, a finding of either procedural or substantive unconscionability suffices to void an agreement. *Burnett*, 470 P.3d at 494. An agreement is procedurally unconscionable if the circumstances around the transaction show that a party "lacked a meaningful choice." *Id.* at 495. In making this determination, the Court looks to (1) "the manner in which the contract was entered," (2) whether the offeree had a reasonable opportunity to understand the contract terms, and (3) "whether the important terms were hidden in a maze of fine print[.]" *Id.* Courts do not apply these factors "mechanically without regard to whether in truth a meaningful choice existed." *Nelson v. McGoldrick*, 896 P.2d 1258, 1262 (Wash. 1995).

There is no factual dispute over whether Plaintiffs lacked a meaningful choice. Even if the signature card was hyperlinked to the DAA, which the record does not reflect, Mr. Goudarzi attested that when he opened the accounts, he did so in person, and the banker did not present him with the acknowledgment section, or inform Mr. Goudarzi about the DAA or the arbitration clause. Dkt. No. 25 at 1–2. Defendant does not offer any contrary evidence to contest Plaintiffs' version of events, nor explain why the signature cards alone are sufficient to rebut Plaintiffs' claims.

Moreover, even if the DAA was technically available to Plaintiffs online to review later, this alone does not show that they had a reasonable opportunity to understand its terms or discover the arbitration clause at account opening. *See Burnett*, 470 P.3d at 492, 496 ("Because essential terms were hidden and Burnett had no reasonable opportunity to understand the arbitration policy

before signing the employment contract, the manner in which the contract was entered demonstrated that Burnett lacked a meaningful choice regarding the arbitration policy."). And indeed, Defendant does not contest that the signature card acknowledgment did not mention the arbitration clause, the arbitration clause was not listed in the table of contents of the applicable DAA, and the clause itself was "hidden in a maze of fine print." *Id.* at 495. Accordingly, taking factual inferences in Plaintiffs' favor, the record here fails to demonstrate that Plaintiffs had reasonable notice of the clause when they opened their accounts.

While the Court offers no opinion about the validity of the DAA generally, the Court concludes that here, Defendant has failed to meet its burden to show a valid and enforceable agreement to arbitrate. Moreover, because the Court finds that the arbitration clause is procedurally unconscionable as a matter of law, trial on arbitrability is not required. The Court thus denies Defendant's motion to compel arbitration.

### IV.  CONCLUSION

The Court DENIES Defendant's motion to compel arbitration (Dkt. No. 16) and DENIES as MOOT Defendant's motion to stay discovery (Dkt. No. 29).

Dated this 16th day of July, 2025.

_Kymberly K. Evanson_
Kymberly K. Evanson
United States District Judge